IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LATTIMORE MATERIALS COMPANY, L.P. | § § § § § | |
| Plaintiff, | | |
| v. | § § § § § § § § | Case No: 4:08cv163 |
| SEDGWICK CLAIMS MANAGEMENT SERVICES, INC. | | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' cross motions for summary judgment (Dkts. 10 & 11). The parties have consented to trial before the United States Magistrate Judge, and both parties agree that the issues to be decided are not in factual dispute but questions of law for the Court to resolve. The parties have submitted a joint stipulation of facts, and each has ably briefed their respective positions. Summary Judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED R. CIV. P. 56(c). Having reviewed the motions, as set forth fully below Defendant's Motion for Summary Judgment (Dkt. 11) is GRANTED and Plaintiff's Motion for Summary Judgment (Dkt. 10) is DENIED.

The genesis of this controversy lies in Lattimore Materials Co. L. P.'s refusal to indemnify Sedgwick Claims Management Services Inc. for expenses and fees it incurred in defending a workmen's compensation claim brought by Lattimore's employee, John McCarty. The parties have

1

filed Joint Stipulations of Fact, which includes the following facts:

1. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action based upon complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. Lattimore is a limited partnership headquartered in Texas.

3. Lattimore conducts its concrete business in Texas and Oklahoma.

4. Zurich American Insurance Company ("Zurich") is the insurer on Lattimore's workers' compensation insurance policy.

5. The Worker's Compensation Insurance policy issued by Zurich covered Lattimore's employees in Texas and Oklahoma.

6. Sedgwick is an Illinois corporation headquartered in Memphis, Tennessee. Sedgwick is authorized to do business in Texas.

7. Lattimore contracted with Sedgwick to provide claims management and administrative services regarding its automobile liability and workers' compensation insurance policies.

8. Lattimore and Sedgwick entered into a Service Agreement for Administration of a claims Program effective as of July 17, 2002 (the "2002 Service Agreement").

....

10. Lattimore representative Scott Chrimes executed the 2002 Service Agreement on September 10, 2002.

11. Sedgwick representative Kimberly Bracken (now Kimberly Brown) executed the 2002 Service Agreement on July 29, 2002.

12. Lattimore and Sedgwick entered into a Service Agreement for Administration of a Claims effective as July 17, 2005 (the "2005 Service Agreement").

....

14. Lattimore representative Scott Chrimes executed the 2005 Service Agreement on August 22, 2005.

15. Sedgwick representative Kimberly Bracken (now Kimberly Brown) executed the 2005 Service Agreement on August 8, 2005.

16. Lattimore and Sedgwick entered into an Addendum to Modify Service Agreement ("Addendum") in 2006.

....

18. Lattimore representative Scott Chrimes executed the Addendum on October 3, 2006.

19. Sedgwick representative Kimberly Bracken (now Kimberly Brown) executed the Addendum on August 25, 2006.

20. The Addendum did not modify of amend Paragraphs 7A or 12 of the 2005 Service Agreement.

21. Both LMC and Sedgwick have an interest in the interpretation of Paragraphs 7A and 12.

22. Sedgwick has entered into an agreement with Zurich to provide claims administration and adjusting services for Zurich's insureds, including Lattimore, regarding its worker's compensation policy.

....

24. In April 2005, John McCarty, an employees of Lattimore, claimed that he was injured during the course and scope of his employment.

25. Subsequently, McCarty made a claim for benefits under Lattimore's workers' compensation policy.

26. Melinda Hixson was at all pertinent times an employee of Sedgwick.

....

28. Lattimore did not disagree with Sedgwick's denial of McCarty's claim.

29. Neither Sedgwick, Sedgwick's employee Melinda Hixson, nor Zurich was found by a court to be negligent in the handling of McCarty's workers' compensation claim.

30. Neither Lattimore, Sedgwick, Sedgwick's employee Melinda Hixson, nor Zurich was found by a court to have acted in bad faith or committed any wrongful intentional acts in the handling of McCarty's workers' compensation claim.

31. On April 26, 2007, McCarty filed a lawsuit against Zurich and Sedgwick's employee, Melinda Hixson, entitled *John Mcarty v. Zurich American Insurance Company and Melinda Hixson*, Cause No. 07-0796-059, in the 59th District Court of Grayson County, Texas (the *"McCarty* Lawsuit"), based upon the handling of his claim.

....

33. The *McCarty* Lawsuit alleged claims against Zurich and Hixson for common law bad faith, violations of the Texas Deceptive Trade Practices Act, violations of the Texas Insurance Code, and intentional infliction of emotional distress.

34. Zurich and Hixson answered by denying they were negligent or otherwise liable.

35. Zurich made demand upon Sedgwick to defend and indemnify it for the claims asserted in the *McCarty* Lawsuit.

36. On May 3, 2007, Sedgwick requested that Lattimore assume the defense of the *McCarty* Lawsuit and indemnify Sedgwick pursuant to Paragraph 7A of the Service Agreement.

....

39. On May 24, 2007, Lattimore refused to defend the claims asserted in the *McCarty* Lawsuit and indemnify Sedgwick from any resulting damages.

....

42. Lattimore has not indemnified Sedgwick for the damages resulting from the *McCarty* Lawsuit.

43. The *McCarty* Lawsuit was settled on December 7, 2007, without Sedgwick admitting negligence or liability.

....

45. The *McCarty* Lawsuit was dismissed wit prejudice on January 14, 2008.

....

47. In consideration for payment of $18,500 to McCarty and his attorney, McCarty fully and completely released any and all claims against Zurich, Hixson, Sedgwick and Lattimore (collectively the "Released Parties").

48. Sedgwick did not admit fault, negligence or liability in the settlement of the *McCarty* Lawsuit.

49. Sedgwick paid the settlement amount of $18,500 on behalf of the Released Parties.

....

51. The amount paid by Sedgwick in settlement of the *McCarty* Lawsuit was not unreasonable.

52. In defending the *McCarty* Lawsuit, Sedgwick incurred attorneys' fees and costs of $46,000.

53. The attorney's fees and cost incurred by Sedgwick in defending and eventually settling the *McCarty* Lawsuit were not unreasonable.

54. The Service Agreement was in effect and applicable prior to July 16, 2008.

55. On May 6, 2008, Lattimore provided Sedgwick with notice that it was terminating the 2005 Service Agreement effective as of July 16, 2008.

*See* Dkt. 9.

Sedgwick's role under the 2002 and 2005 service agreements was to provide claims management services for Lattimore. The provisions at issue under the 2002 and 2005 agreements are identical. In relevant part, Section 7a provided as follows:

> **However, if Sedgwick CMS is named as a party to any litigation or proceeding, or *is the subject of any claim or demand* because of its actions on behalf of Client (Lattimore), Client agrees to indemnify, defend, and hold Sedgwick CMS harmless from any and all losses, damages, costs, judgments and expenses (including attorney fees and costs) with respect to any such litigation, proceeding, claim or demand, unless and until a finding is entered to the effect**

5

> **that Sedgwick CMS failed to exercise such reasonable care in the performance of its obligations hereunder (emphasis added).**

Sedgwick also had a service agreement with Zurich, the excess carrier for Lattimore's workmen compensation claims. Under that agreement, there was also an indemnification provision. Melinda Hixson, Sedgwick's employee, denied McCarty's claim. As stipulated, Lattimore did not disagree with the denial. Thereafter, McCarty filed a lawsuit against Zurich and Hixson in the 59th Judicial District Court for Grayson county alleging a number of causes of actions all surrounding the denial of McCarty's claim. Sedgwick was not named as a party to the suit, although Hixson, its employee, was so named. Thereafter, Zurich made demand on Sedgwick to defend and indemnify it for claims asserted in the *McCarty* suit. Sedgwick assumed the defense.

Sedgwick then requested that Lattimore assume the defense of the *McCarty* lawsuit and indemnify it. Lattimore refused. The *McCarty* lawsuit was settled without an admission of liability. Sedgwick obtained a release of all named parties, along with itself and Lattimore. The suit was dismissed with prejudice. Sedgwick paid $18,500 and incurred attorneys fees in the amount of $46,000. Lattimore has stipulated that neither the cost to settle nor the attorney's fees incurred were unreasonable.

Since Sedgwick was not named as a party, Lattimore could only be responsible if Sedgwick was the subject of any claim or demand on it for its actions on behalf of Lattimore. Sedgwick argues that since the contract contains a choice of law provision, Tennessee law controls. Lattimore argues that Texas law applies and that the express negligence rule bars enforcement of the indemnity provision.

The express negligence doctrine requires that an intent to indemnify a party from the consequences of that party's own negligence be expressed in specific terms within the four corners of the contract. *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000); *Dresser Indus., Inc., v Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). The express negligence requirement is a rule of contract interpretation and thus a question of law for the court. *Fisk Elec. Co. v. Constructors & Assocs., Inc.,* 888 S.W.2d 813, 814 (Tex. 1994).

However, the Court finds that the express negligence rule does not apply in this case. The indemnification provision does not purport to indemnify Sedgwick from the consequences of its own negligence. In fact, to the contrary, there is an express provision that no indemnification occurs if Sedgwick fails to exercise reasonable care (or, in other words, is negligent). As such, the rule is simply not applicable. Sedgwick has not sought indemnity for its negligence but rather indemnity for responding to a demand and providing a defense and indemnification of the excess insurer in the underlying suit brought by McCarty.

Not only were there no allegations as to any negligence on the part of Sedgwick, but the underlying suit makes no reference to any negligence. The original petition filed by Lattimore and removed to this Court contains no allegations that Sedgwick was negligent. Further, no argument is made in the motion for summary judgment that Sedgwick was negligent.

Lattimore cites the Court to *Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W. 2d 813 (Tex. 1994). *Fisk* holds that parties seeking to indemnify themselves from their own negligence must express that intent in specific terms. In *Fisk*, Fisk's employee was injured on the job site. Constructors brought a third-party claim against Fisk seeking indemnification. The indemnification

7

clause had no reference to indemnity for negligence. The employee sued Constructors in negligence. The Texas Supreme Court held there was no duty to indemnify.

Here, the underlying suit was not for negligence. And, the clause at issue specifically states that Lattimore is not liable for Sedgwick's failure to exercise reasonable care. Therefore, if Sedgwick was negligent, there is an express provision abrogating Lattimore's duty to indemnify. Since there is no pleading or argument that Sedgwick was negligent, the only question for this Court is to determine to what extent Sedgwick may seek indemnification.

Sedgwick argues that Tennessee law controls contract interpretation. Under Tennessee law, "[t]he cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.,* 521 S.W.2d 578, 580 (Tenn. 1975); *see also Christenberry v. Tipton,* 160 S.W.3d 487, 494 (Tenn. 2005). If the language of the contract is clear and unambiguous, the literal meaning controls the outcome of the dispute. *Planters Gin Co. v. Fed. Compress & Warehouse Co.,* 78 S.W.3d 885, 890 (Tenn. 2002). In such a case, the contract is interpreted according to its plain terms as written, and the language used is taken in its "plain, ordinary, and popular sense." *Bob Pearsall Motors, Inc.*, 521 S.W.2d at 580; *see also Planters Gin Co.,* 78 S.W.3d at 890. The interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect. *See Davidson v. Davidson,* 916 S.W.2d 918, 922-23 (Tenn. Ct. App. 1995). The entire written agreement must be considered in determining the meaning of any or all of its parts. *D. & E. Const. Co. v. Robert J. Denley Co.,* 38 S.W.3d 513, 518-19 (Tenn. 2001).

It is the universal rule that a contract must be viewed from beginning to end, and all its terms must pass in review, for one clause may modify, limit, or illuminate another. *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.,* 690 S.W.2d 231, 237 (Tenn. 1985) (internal citations omitted). The right of indemnification rests upon the principle that everyone is responsible for the consequences for his own wrong, and, if another person has been compelled to pay the damages which the wrongdoer should have paid, the latter becomes liable for the former. *Southern Coal & Coke Co., v. Beech Grove Mining Co.,* 381 S.W.2d 299 (Tenn. Ct. App. 1964).

Even applying Texas law, the rules of contract interpretation are the same. In Texas, contract interpretation is a question of law. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650-51 (Tex. 1999). A court must favor an interpretation that affords some consequence to each part of the agreement so that none of the provisions will be rendered meaningless. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex. 1983). No single provision taken alone will be given controlling effect. *Id.* at 393. And all provisions of a contract must be considered with reference to the entire instrument. *Id.*

The question narrowly stated is whether Sedgwick was subject to a demand because of its actions on behalf of Lattimore. The Court finds that it was. Zurich made a demand for Sedgwick to indemnify it in the *McCarty* lawsuit. The suit was filed against Zurich because it was the insurer of claims for Lattimore. Sedgwick's denial of the claim was within the scope of its contract with Lattimore, and Sedgwick had the authority to deny the claim.

When reviewing the contract as a whole, it is readily apparent that the Zurich's demand was covered under the Lattimore contract. In paragraph 2A, Lattimore had the obligation to provide

9

excess coverage information so Sedgwick could notify the appropriate insurer. In paragraph 2 D, Lattimore had the responsibility for providing adequate funds for payment of Qualified Claims. Sedgwick had full authority to settle any claim under $10,000, but if it failed to do so and a subsequent award in excess of that amount was obtained, it had no liability for its failure to so settle. Paragraph 5E of the agreement also contemplated that Lattimore was responsible for the non-payment of any service fees which the Insurer was obligated to pay to Sedgwick. The parties have stipulated that Zurich was the insurer on Lattimore's worker's compensation policy. Therefore, Lattimore was a named insured. The parties have also stipulated that Sedgwick also entered into an agreement with Zurich to provide claims administration and adjusting services for Zurich's insureds, *including Lattimore,* regarding the worker's compensation policy. Therefore, even though Zurich made a demand under its agreement with Sedgwick, the demand was a result of Sedgwick's actions on behalf of Lattimore, whether labeled the client or the insured. Accordingly, the Court finds that Sedgwick is entitled to summary judgment on its claim and that it recover the stipulated amounts for defense of the *McCarty* lawsuit.

It is therefore ORDERED, ADJUDGED, and DECREED that Sedgwick Claims Management Services, Inc. have and recover the sum of $64,500, plus interest, and costs from Lattimore Materials Company, LP.

**SO ORDERED**.

**SIGNED this 11th day of May, 2009.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE